UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

Wachovia Bank, National Association and
Wachovia Capital Markets LLC,

                                Plaintiffs,

                           -against-

VCG Special Opportunities Master Fund, Ltd.
(f.k.a. CDO Plus Master Fund Ltd.),

                               Defendant.

------------------------------------------------------------------- x

          08 CV 5655 (UA)

## DECLARATION OF SHAWN PATRICK REGAN

Pursuant to 28 U.S.C. § 1746, Shawn Patrick Regan certifies as follows:

1.      I am a member of the law firm Hunton & Williams LLP, counsel for Plaintiffs Wachovia Bank, National Association ("Wachovia") and Wachovia Capital Markets, LLC ("WCM") in the above-captioned action.

2.      Hunton & Williams LLP is also counsel to Defendant Wachovia in a civil action before the Honorable Laura Taylor Swain, captioned *CDO Plus Master Fund Ltd. v. Wachovia Bank, National Association*, Civil Action No. 07 CV 11078 (LTS) (the "SDNY Litigation"), which was brought by VCG Special Opportunities Master Fund, Ltd. (f.k.a. CDO Plus Master Fund Ltd.).

3.      The SDNY Litigation was filed by Defendant VCG, in state court before being removed, on November 28, 2007 – nearly seven months ago. The parties to the SDNY Litigation are presently engaged in fact discovery, which is scheduled to be completed by September 30, 2008.

4.     And, pursuant to Magistrate Judge Peck's Order, dated May 1, 2008 (as modified by Judge Peck at the June 9 scheduling conference), the parties are scheduled to participate in a settlement conference on July 24, 2008.

5.     Attached hereto as Exhibit A is a true and correct copy of a FINRA Dispute Resolution Arbitration demand, recently brought by Plaintiff CDO Plus Master Fund Ltd. (n.k.a. VCG Special Opportunities Master Fund Ltd.) against WCM.

6.     Attached hereto as Exhibit B is a true and correct copy of CDO Plus's Statement of Claim in the FINRA Arbitration.

7.     Attached hereto as Exhibits C through E, are true and correct copies of deposition notices served by CDO Plus in the SDNY Litigation on Wachovia Capital Markets employees.

8.     Attached hereto as Exhibit F is a true and correct copy of CDO Plus's Rule 26(a)(1) Initial Disclosures.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2008.

Shawn Patrick Regan

# *Exhibit A to Regan Declaration*

# FINRA

**Financial Industry Regulatory Authority**

May 8, 2008

William Hayden
Wachovia Capital Markets, LLC
301 S. College Street, TW-8
Mail Code NC0602
Charlotte, NC 28288-0601

Subject:    FINRA Dispute Resolution Arbitration Number 08-01420
VCG Special Opportunities Master Fund LTD. f/k/a CDO Plus Master Fund LTD. v.
Wachovia Capital Markets, LLC

Dear Mr. Hayden:

FINRA Dispute Resolution provides a forum for the resolution of disputes involving broker-dealers, and members of the American Stock Exchange (AMEX), International Stock Exchange (ISE), Philadelphia Stock Exchange (PHLX), NASDAQ, and Municipal Securities Rulemaking Board (MSRB) registrants and/or their associated persons.

This office administers cases according to the procedures set forth in the NASD Code of Arbitration Procedure (NASD Code). The most up-to-date version of the rules can be accessed or downloaded from our Web site at http://www.finra.org. On our Web site you will also find FINRA Dispute Resolution Party's Reference Guide, which contains important instructions concerning filing your answer or other claims. If you do not have access to the Internet, you may call our office to request a copy of these documents.

### Filing a Statement of Answer

Since you have been named as a party in this arbitration, enclosed is a copy of the Statement of Claim. You are required by the NASD Code to arbitrate this dispute.

Your Statement of Answer must specify all relevant facts and available defenses to the Statement of Claim submitted.[1]  In addition, your Answer may include any related claim(s) that you may have against Claimant or any other party subject to arbitration under the rules. If you assert any of these claims you must submit the applicable fee. Please refer to the Schedule of Fees[2] for the related filing fee.

---

[1]Customer Code Rule 12303
Industry Code Rule 13303
Old Code Rule 10314(b)

[2]Customer Code Rule 12900
Industry Code Rule 13900
Old Code Rule 10332

Investor protection. Market integrity.    Dispute Resolution    Boca Center Tower 1    t  561 416 0277
Southeast Regional Office    5200 Town Center Circle    f  301 527 4868
Suite 200    www.finra.org
Boca Raton, FL
33486-1015

Pursuant to the NASD Code,[3] you are required, on or before June 27, 2008, to send to Claimant and all other parties a signed Uniform Submission Agreement (form enclosed) and your Answer. Claimant or Claimant's counsel's address is provided at the end of this service letter.

The NASD Code also requires that you send to the Director of Arbitration:
(a) **the original and three copies** of the Uniform Submission Agreement, properly signed and dated by you;
(b) **the original and three copies** of your Answer; and
(c) **four copies** of any document(s) referred to in your Answer.

When sending copies of your Answer to the Director of Arbitration, please indicate that you have properly served your Answer on all parties. If you need an extension of time to file your Statement of Answer, you may contact Claimant directly and request one. If Claimant agrees to extend your time to file your Answer, please notify FINRA in writing of the new deadline for filing your Answer. You should also send a copy of that notice to Claimant and all other parties.

If your Answer is not served upon all parties, a motion to preclude your Answer may be made pursuant to the NASD Code.[4] In addition, failure to provide FINRA Dispute Resolution with copies of your Answer as described above will preclude it from inclusion in the package of pleadings provided to the Arbitrator(s).

## Hearing Location

If an arbitration involves a public customer, FINRA Dispute Resolution will generally select a hearing location closest to the customer's residence at the time the dispute arose.[5]

In disputes between AMEX, ISE, FINRA, NASDAQ or PHLX member firms, or MSRB Registrants and associated persons, FINRA Dispute Resolution will select the hearing location that is closest to the location where the associated person was employed at the time the dispute arose.

In industry disputes involving only member firms and/or MSRB Registrants unless the firms are in the same locale or the parties agree to a specific hearing location, FINRA Dispute Resolution will consider the following factors when deciding the hearing location:

1) Which party initiated the transactional at issue;
2) The location of witnesses and documents; and
3) The relative hardship of a party's travel to a location.

---

[3]Customer Code Rule 12303
Industry Code Rule 13303
Old Code Rule 10314(b)

[4]Customer Code Rule 12308
Industry Code Rule 13308
Old Code Rule 10314(b)(2)(c)

[5]Customer Code Rule 12213
Industry Code Rule 13213

The **ANTICIPATED** hearing location of this case is: Boca Raton, FL. This preliminary decision was made on behalf of the Director of Arbitration pursuant to the NASD Code.[6] A final decision regarding the hearing location will be rendered prior to the time the Panel is being appointed. The NASD Code[7] authorizes the presiding Panel to determine the time and date of all hearing(s).

If the anticipated initial hearing location listed above is **UNKNOWN**, FINRA Dispute Resolution is requesting recommendations from all parties for the hearing location based on the above applicable guidelines.

## Representation of Parties

FINRA Dispute Resolution has amended the NASD Code to address the representation of parties in arbitration.[8] This new rule permits parties to be represented pro se (on their own) or by an attorney admitted to practice and in good standing in any jurisdiction. A party may be represented by a non-attorney, unless state law prohibits such representation, the person is currently suspended or barred from the securities industry in any capacity, or the person is currently suspended or barred from the practice of law or disbarred. The amendments apply to any case in which parties provide FINRA with notice of representation on or after December 24, 2007.

## Other Information

Please review the NASD Code and FINRA Dispute Resolution Party's Reference Guide booklet. Should you require additional information regarding FINRA Dispute Resolution arbitration, please contact us and refer to the case number assigned to this case, which is 08-01420. FINRA Dispute Resolution encourages the parties to communicate among themselves to resolve issues that do not require FINRA Dispute Resolution intervention.

Pursuant to Article V, Section 2(c) of the FINRA By-Laws, if you are a registered representative with FINRA, you are required to keep your registration application current. Therefore you are advised to review the Form U4 to determine if disclosure of this matter is required. If so, your failure to update your registration application may result in the filing of a formal complaint based on any omission. Any questions regarding this disclosure requirement should be directed to FINRA Member Services Phone Center (301) 590-6500.

---

[6]Customer Code Rule 12213
  Industry Code Rule 13213
  Old Code Rule 10315

[7]Customer Code Rule 12600
  Industry Code Rule 13600
  Old Code Rule 10315

[8]Customer Code Rule 12208
  Industry Code Rule 13208

### Discovery

In disputes involving customers please review the applicable NASD Code provisions[9] and the attached Discovery Guidelines. In disputes involving only industry parties please review the applicable discovery code provisions for guidance.[10]

### Motions[11]

The time to respond to motions (other than motions to dismiss, as noted below) is governed by Customer and Industry Code Rules 12503(b) and 13503(b), respectively:

Responding to Motions
Parties have 10 days from the receipt of a written motion to respond to the motion, unless the moving party agrees to an extension of time, or the Director or the Panel decides otherwise. Responses to written motions must be served directly on each other party, at the same time and in the same manner. Responses to written motions must also be filed with the Director, with additional copies for each Arbitrator, at the same time and in the same manner in which they are served on the parties.

### Motions to Dismiss

FINRA Dispute Resolution does not have a rule that expressly addresses motions to dismiss claims before a hearing on the merits. Therefore, for cases proceeding according to the Old Code, Customer Code, or Industry Code, the response to a motion to dismiss will not be due until the Panel sets a deadline for the response.

Very truly yours,

|s|

Bonnie R. Simon
Senior Case Administrator
561-416-0277 Fax:301-527-4868

BRS:ss2:LC39E
idr:03/04/2008

Enclosures

CC:
    Richard A. Stephens, VCG Special Opportunities Master Fund LT
    Richard A. Stephens Attorney at Law, 7700 Congress Avenue, Suite 1109, Boca Raton, FL 33487

---

[9]Customer Code Rule 12506

[10]Industry Code Rule 13505 through and including Rule 13514

[11]For questions about motion practice under the Old Code, please contact your case administrator.

RECIPIENTS:

William Hayden, Wachovia Capital Markets, LLC
Wachovia Capital Markets, LLC, 301 S. College Street, TW-8, Mail Code NC0602,
Charlotte, NC 28288-0601

UNIFORM SUBMISSION AGREEMENT

**FINRA Dispute Resolution**

In the Matter of the Arbitration Between

Name of Claimant(s)

VCG Special Opportunities Master Fund LT

08-01420

Name of Respondent(s)

Wachovia Capital Markets, LLC

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, cross claims, and all related counterclaims, and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or *Code of Arbitration Procedure* of the sponsoring organization.

2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.

3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or *Code of Arbitration Procedure* of the sponsoring organization.

4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

Party(ies) Signature

Wachovia Capital Markets, LLC

Date: _____

LC43A: SUBMISSION AGREEMENT

idr:02/08/2008

RECIPIENTS:
   William Hayden, Wachovia Capital Markets, LLC
   Wachovia Capital Markets, LLC, 301 S. College Street, TW-8, Mail Code NC0602,
   Charlotte, NC 28288-0601

*Exhibit B to Regan Declaration*

## FINRA DISPUTE RESOLUTION

---

**VCG SPECIAL OPPORTUNITIES
MASTER FUND LTD. f/k/a
CDO PLUS MASTER FUND LTD.**

.
.
.
.

        **Claimant,**

.
.
.

**v.**

.
.

        **FINRA Case No.:**

**WACHOVIA CAPITAL MARKETS, LLC**

.
.

        **Respondent.**

.
.

---

## <u>STATEMENT OF CLAIM</u>

This arbitration is brought by VCG Special Opportunities Master Fund Ltd.,

formerly known as CDO Plus Master Fund Ltd ("Claimant" or "VCG") against

Wachovia Capital Markets, LLC ("Respondent" or "Wachovia Capital") in

connection with an investment contract product sold to VCG through Wachovia

Capital on or about May 27, 2007, called a "credit default swap", resulting in almost

$10,000,000 in compensatory damages to VCG.  The amount of losses may increase,

so the compensatory damages in this arbitration are currently unstated.

Wachovia Capital, a member of FINRA, is liable to VCG based on Wachovia

Capital's breach of FINRA Conduct Rules (including Rule IM-2310-2 "Fair

Dealing",[1] Rule 2300 "Commercial Honor and Just and Equitable Principles of

---

[1] FINRA Conduct Rule IM 2310-2 *Fair Dealing with Customers*: (a)(1)
Implicit in all member and registered representative relationships with customers and

Trade",[2] Rule IM-2310-3 "Suitability Obligations to Institutional Customers",[3] breach

of fiduciary duties, violations of other applicable FINRA Conduct Rules, negligence,

negligent supervision, violations of customer agreements, violations of the implied

covenant of good faith and fair dealing, fraud, constructive fraud, and any other legal

theories under federal and state law or FINRA practice that may be applicable to the

facts. Claimant seeks equitable, as well as legal, relief.[4]

---

others is the fundamental responsibility for fair dealing. Sales efforts must therefore
be undertaken only on a basis that can be judged as being within the ethical standards
of the Association's Rules, with particular emphasis on the requirement to deal fairly
with the public.

[2] FINRA Conduct Rule 2110. *Standards of Commercial Honor and Principles
of Trade*: A member, in the conduct of its business, shall observe high standards of
commercial honor and just and equitable principles of trade.

[3] FINRA Conduct Rule 2310-*3 Suitability Obligations to Institutional
Customers*: .... Members are expected to meet the same high standards of
competence, professionalism, and good faith regardless of the financial circumstances
of the customer.... If a customer is either generally not capable of evaluating
investment risk or lacks sufficient capability to evaluate the particular product, the
scope of a member's customer-specific obligations under the suitability rule would
not be diminished by the fact that the member was dealing with an institutional
customer.

[4] The Panel may note that, for court actions, the courts are split as to whether a
violation of FINRA Conduct Rues or NYSE Rules constitutes a cause of action for
proceeding in court. However, the issue is clear that a claimant *in FINRA arbitration*
can seek damages for violations of FINRA Conduct Rules. In the words of Linda D.
Fienberg, President of the FINRA (and former NASD) Dispute Resolution:

> In SRO/NASD arbitration, unlike in court, you get an equitable result.
> **You do not have to have a claim that is cognizable under state or
> federal law; it can be cognizable under NASD rules**. So, for example,
> there is only one cause of action under federal securities laws, that's 10-
> b. It's very limited, it has a very short statute of limitations. The rules

In essence, Wachovia Capital engaged in unfair dealing and commercially dishonorable and inequitable trading practices by discriminating against customer VCG in favor of another customer [sister-affiliate Wachovia Bank under common control with Wachovia Capital] and failing to disclose certain inside information known by Wachovia Capital through proprietary sources that the investment contract with terms arranged by Wachovia Capital was an unfair and exceptionally risky deal for VCG. The undisclosed information [including internal analyses and mortgage data received by Wachovia Capital from proprietary sources] was information that was unknown by, and not publicly available to, Claimant VCG. By arranging the terms of this deal, and not disclosing material information, Wachovia Capital allowed and aided another customer, its sister-affiliate Wachovia Bank, to wrongfully extract (or in other words, "steal") about $10,000,000 from VCG. Claimant VCG believes that, based on the circumstantial evidence of the rapid requests by Wachovia Bank upon VCG for money under the investment contract, within weeks of the inception of the investment contract, Wachovia Capital knew before the deal closed that VCG was undertaking a substantially higher risk than the terms set by Wachovia Capital. With

---

that are applied by arbitrators looking for equitable relief are much broader than if they had to strictly follow the law.

Speech of Linda D. Fienberg, July 20, 2004, presented to North American Securities Administrators Association (NAASA) Arbitration Forum; available at www.connectlive.com/events/nasaa [39:20-40:00 min.] (emph. add.)

a 2.75% annual payment to VCG [$275,000] for putting up $10,000,000 of credit swap, the odds of default causing payment of the $10,000,000 were supposed to be extremely low, and should have been a conservative investment for VCG; but the documents received during discovery in this matter should reveal that Wachovia Capital had inside proprietary information, unknown to VCG and not publicly available, indicating that this deal was extremely dangerous for VCG, jeopardizing a large percentage of VCG's net worth (i.e., 40%) that Wachovia Capital knew was so limited, to wit, Wachovia Capital knew that VCG had only $25 million in capital at that time.

Ordinarily, brokers act on behalf of customers by making markets; and they can, from time-to-time take a proprietary position based on their opinion of risk/return. However, in this case, Wachovia Capital crossed over the line of fair dealing. <u>Wachovia Capital and its sister affiliate Bank knew that they were about to experience billions of dollars in losses, and were looking to predatorily "steal" from other accounts, such as Claimant VCG, to unfairly "pick off" their assets.</u> Acting with commercial dishonor, Wachovia Capital "suckered" Claimant VCG into the swap deal, with risk and terms that Respondent knew, or should have known, were grossly unfair and predatory vis-à-vis Claimant, for the benefit of another client... the sister Bank.

4

This arbitration is brought under FINRA Code of Arbitration Procedure Rule 12200, providing that parties must arbitrate a dispute under the Code if requested by the customer, and "[t]he dispute arises in connection with the business activities of the member"; and also brought under Rule 12200 based on written arbitration clauses in any written agreements between the parties. During the period at issue, VCG was a customer of Wachovia Capital through written and oral agreements and a course of business dealings, as well as through VCG's investment advisor, Vanquish Advisors LLC, formerly known as Rekon Advisors LLC. The dispute arises in connection with the business activities of Wachovia Capital. The customer relationship between VCG and Wachovia Capital was extensive, and caused VCG to trust Wachovia Capital. As a customer, VCG, through its agents, was in almost constant contact with Wachovia Capital by telephone and Bloomberg emails about potential deals, such as offers by Wachovia Capital to sell to customer VCG the equity and debt from collateralized debt obligations, and offers to sell to customer VCG debt from mortgage backed securities. Some of the Wachovia Capital agents with whom VCG did business were William McAndrews, Scott Williams, Sergie Zagin, Tom Edwards, Tom Wickwire and Michael Thompson. Moreover, VCG, through its agents, have purchased securities as a customer from Wachovia Capital previously.

Venue is proper in Boca Raton, Florida, which is the nearest FINRA hearing location to Claimant VCG's principal place of business in the United States, located in Delray Beach, Florida, during the misconduct of Wachovia Capital at issue; and all

5

communications with VCG's agents about the swap were transmitted to and from Delray Beach, Florida.[5]

Claimant VCG is a relatively tiny private investment company that, at the time of the May 27, 2007 transaction had only eight investors and assets of about $25 million, with relatively conservative investments.[6] VCG trusted Wachovia Capital as a fiduciary, and expected even-handed and fair treatment as a customer.

In the course of its business communications and dealings with Wachovia Capital, VCG and its agents inquired about a credit default swap with Wachovia Capital of an underlying debt instrument (called the "reference obligation"), concerning a possible candidate (called a "name") of Senior Notes of Forge ABS High Grade CDO Ltd. 2007-1A ("Forge"), a collateralized debt obligation ("CDO"). This was intended to be a conservative, relatively safe, investment for VCG, one that would produce an investment return commensurate with the risk.. After a period of evaluation, Wachovia Capital contacted Claimant VCG with its recommendation to go forward with such a credit default swap, *with Wachovia Capital setting the terms* consisting of a 2.75% annual fee calculated on $10,000,000 of Forge, and VCG

---

[5] VCG is incorporated under the laws of the Isle of Jersey, Channel Isles.

[6] In a general non-legal parlance, VCG may be known as a tiny and relatively conservative/balanced hedge fund, since it is not regulated as a public mutual fund company. Just as there are conservative/balanced mutual funds, there exist conservative/balanced private investment companies.

required to place $750,000 as "initial margin",[7] to secure the obligation; and in return,

VCG agreed to pay Citibank only upon the occurrence of a credit event.[8]. Of

significance, under such an investment contract, neither of the swap's counterparties

(i.e., the parties buying and selling the credit default risk) necessarily holds the Forge

debt instrument on which the swap is based, so it is _not_ insurance against losses on

the reference obligation suffered by one of the counterparties.   Also of significance,

VCG thought that Wachovia Capital was going to engage in  the investment contract

as a principal, but at the last moment brought in another of its customers instead, to

wit, sister-affiliate Wachovia Bank, under common control. Whether Wachovia

Capital was going to act as a principal, or as agent for another customer did not

matter, since the obligations of full disclosure, fair dealing, and commercial honor

continued _vis-à-vis_ VCG as a customer. Prior to the last-minute change, all dealings

by VCG and its agents were with Wachovia Capital, which set the terms of the deal,

---

[7] Wachovia Capital wanted $1.5 million as the initial margin, but when VCG was prepared to walk away from the deal, Wachovia Capital lowered it to $750,000. Almost immediately after the deal occurred, excuses were made by Wachovia Bank, to which Wachovia Capital had assigned the deal, to force VCG to raise the initial margin to $1.5 million, "coincidentally" to the amount originally rejected by VCG.  It was only later, perhaps by early July, that VCG began to realize that something was terribly wrong.

[8] Under the ISDA standard terms that govern the investment contract, a credit event is defined as a "Writedown, Failure to Pay Principal or an Interest Shortfall".

and therefore "recommended" it, according to the industry standards and compliance manuals.[9]

Wachovia Capital states on the Internet that it gives "Uncommon Ideas for Uncommon Challenges", publicly touting its "capital solutions" and "experienced advice". VCG trusted Wachovia Capital as a fiduciary, and expected fair dealing, equitable trading, honesty, and full disclosure, but Wachovia Capital violated its obligations.

Within weeks of the May 27, 2007 commencement of the swap, Wachovia Bank made more and more demands for margin based on its view of the fair value of the swap contract, eventually demanding and receiving almost $10 million from VCG by November 2007. The post-closing rapid demands for money by Wachovia Bank, the ultimate counterparty to the swap brought in by Wachovia Capital, is circumstantial evidence that Wachovia Capital, which set up the terms of the swap, had inside information *before* the deal was consummated, that VCG was unfairly undertaking a much higher risk than VCG was led to believe.

The post-closing demands for money by Wachovia Bank is currently the subject of litigation in New York.[10] In contrast, the claim in this arbitration is against

---

[9] It is industry standard, and in virtually every compliance manual, that a favorable comment by a broker to a security or an investment renders it a "recommendation" by the broker on the purchase.

[10] Whether there is some overlap in the damages sought in the New York litigation against a bank and this arbitration against a broker-FINRA Member, is a matter to be determined, and could depend upon the ultimate theory of liability in any

Wachovia Capital, *not* a party to the New York litigation, based on its unique obligations as a FINRA member, and other legal duties owed to its customer, to be decided by a panel of FINRA arbitrators. Wachovia Capital, the FINRA member that was setting the terms for the swap, had obligations to disclose information to its customer VCG instead of concealing critical information and discriminating in favor of another customer that happened to be its sister-affiliate under the same corporate holding company.

## Discovery of Documents is This Unusual Arbitration Will Go Way Beyond the Discovery Guide

This is not the typical customer case that the Panel members are accustomed to seeing, where the FINRA Discovery Guide may cover most of the areas of discovery. Instead, it comes within the ambit of the prefatory language of the Discovery Guide saying that it "serves as a guide", and "it is not intended to remove flexibility from arbitrators or parties in a given case. Arbitrators can order the production of documents not provided for by the Document Production Lists...." Well, this is such a "given case" if ever the Panel will see one, requiring very specific document requests to ferret-out the truth about the concealment of critical information that should have been disclosed to customer VCG, which would have caused this investment contract never to occur, instead of Wachovia Capital arranging for its

Panel Award. If Wachovia Bank contends in the litigation that an Award from this Panel somehow affects the amount of damages sought in the litigation (which will likely go to trial months or years after this arbitration's final hearing) it is a matter for a court, and should not concern this Panel.

9

sister-affiliate Wachovia Bank to essentially "steal" about $10,000,000 from the tiny investment company and its eight investors.

Areas of inquiry for document requests will include these types of parameters:

1.      What inside information did Wachovia Capital have about the mortgage problems with the thousands of mortgages in the Forge reference obligation, so that Wachovia Capital, and its sister-affiliate, <u>knew</u> that actual and potential defaults in the underlying collateral would cause a rapid extraction of the $10,000,000 from VCG?

2.      What inside information (such as internal analyses or computer models) did Wachovia Capital have about the impending meltdown in the credit/mortgage markets so that it or its sister-affiliate would use the tiny investment company as a "patsy" to extract millions of dollars?

3.      What communications occurred between Wachovia Capital and its customer Wachovia Bank (including emails) to exchange information about the swap, and the impending mortgage meltdown, and about the pricing and counterparty risks (including "low level information" about the mortgages involved) which information should have been disclosed to VCG as a customer of Wachovia Capital?

4.      What did Wachovia Capital know about a "ratings migration", to wit, the impending downgrade in ratings of the mortgages or derivatives underlying Forge, and similar "ratings migrations", that should have been disclosed?

5.     Essentially, in Nixonian terms, what did Wachovia Capital know, and when did it know it?

The Panel will be asked to order broad discovery into these topics if Wachovia Capital refuses to cooperate.

### Punitive Damages

If, as Claimant VCG expects, the evidence from the documents reveals that Wachovia Capital concealed material information from VCG either through gross negligence or worse, punitive damages of at least three or four times compensatory damages should be assessed against Respondent Wachovia Capital.

### Conclusion

Claimant VCG asks that the Panel issue an Award in its favor of compensatory damages in an amount to be proven, punitive damages in an amount at least three or four times compensatory damages, the costs of this arbitration, and such other and further relief as the Panel deems appropriate.

Richard A. Stephens
Law Office of Richard A. Stephens
7700 Congress Avenue, Suite 1109
Boca Raton, FL 33487
Florida Bar No. 977055
Tel.:   (561) 981-8180
Fax:   (561) 981-8153
bocalawyer@aol.com
Counsel for Claimant

Address and phone from May 30, 2008
through October 10, 2008, as follows:

1514 Beech Mountain Parkway
Beech Mountain, NC 28604
Tel (828) 387-2251
Dated: May 1, 2008                      Fax (828) 387-9391

**N.A.**                                                                                  **N.A.**

Name of Registered Representatives                                          Account Numbers


## III.  <u>RELIEF REQUESTED</u>

1.  <u>Damages</u>

<u>Actual Damages Requested</u>                                    **Unknown at this time but greater than**
                                                                               **$50,000**
(monetary sum required to compensate a party for his or her loss)

<u>Punitive Damages Requested</u>                                  **At least three times compensatory damages**
(monetary amount intended to punish the wrongdoer)

                                       * AMOUNT IN DISPUTE:    **Unknown but subject to damage study**

                                       *Use this amount to calculate the correct filing fee and hearing session
                                       deposit in Part IV. This amount *must* match the amount stated in your
                                       claim.

<u>Interest</u>
(include calculations, if possible) **To be calculated in damage study**


   2.  <u>Other Type of Relief Requested</u>

   **Referral to FINRA Enforcement for disciplinary action.**


   3.  <u>Costs</u>

(Provide specific amounts, if known. If not known, please mark an "X" to indicate the costs you are requesting)
   **X**
_____
Forum Fees


_____
Attorney's Fees
   **X**
_____
Witness and Production Fees
   **X**
_____
Other Case-Related Costs

FINRA Arbitration
UNIFORM SUBMISSION AGREEMENT

Claimant(s).

**In the Matter of the Arbitration Between**

Name(s) of Claimant(s)

_VCG Special Opportunities Master Fund Limited  f/k/a_
_CDO Plus Master Fund Ltd._

**and**

Name(s) of Respondent(s)

_Wachovia Capital Markets, LLC_

1.  The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, cross claims and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or *Code of Arbitration Procedure* of the sponsoring organization.

2.  The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.

3.  The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or *Code of Arbitration Procedure* of the sponsoring organization.

4.  The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5.  The parties hereto have signed and acknowledged the foregoing Submission Agreement.

_VCG Special Opportunities Master Fund Limited  f/k/a CDO Plus Master Fund Ltd._

| | |
|---|---|
| Claimant Name (please print) | |
| Claimant's Signature | 4/23/2008 |
| | Date |

| | |
|---|---|
| Claimant Name (please print) | |
| Claimant's Signature | |
| | Date |

**If needed, copy this page.**

21

# *Exhibit C to Regan Declaration*

MINTZ & GOLD LLP
Steven G. Mintz (SM 5428)
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, NY 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
*Attorneys for Plaintiff*
*VCG Special Opportunities Master Fund Ltd.,*
*(f/k/a CDO Plus Master Fund Ltd.)*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

CDO PLUS MASTER FUND LTD.,                        :

                         Plaintiff,        :

        - against -        :

WACHOVIA BANK,        :
NATIONAL ASSOCIATION,        :

                   Defendant.        :
------------------------------------------------------------X

**07 Civ. 11078 (LTS)(AJP)**

**NOTICE OF DEPOSITION OF**
**SERGEI ZAGIN**

**ECF CASE**

**PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, Plaintiff VCG Special Opportunities Master Fund, Ltd. (f/k/a CDO Plus

Master Fund Ltd.), by and through its counsel, will take the deposition(s) upon oral

examination of Sergei Zagin, having a business address at Wachovia Bank, 301 South College

Street, Charlotte, NC 28288, at the offices of Plaintiff's counsel, Mintz & Gold LLP, 470 Park

Avenue South, 10th Floor North New York, NY 10016, commencing at 9:00 a.m. on

August 7, 2008, or some other place as the parties agree on.

The deposition will be taken before a notary public or other individual authorized to administer oaths and will be recorded by stenographic and videographic means.

Dated:    New York, New York
          May 9, 2008

MINTZ & GOLD LLP

*Terence W. McCormick*

Steven G. Mintz (SM 5428)
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, NY 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
*Attorneys for Plaintiff*
*VCG Special Opportunities Master Fund Ltd.,*
*(f/k/a CDO Plus Master Fund Ltd.)*

To:    **HUNTON & WILLIAMS LLP**
       Patrick L. Robson, Esq.
       Bank of America Plaza, Suite 3500
       101 South Tryon Street
       Charlotte, North Carolina 28280

       Shawn Patrick Regan, Esq.
       200 Park Avenue
       New York, New York 10166-0091
       *Attorneys for Defendant*
       *Wachovia Bank, N.A.*

2

*Exhibit D to Regan Declaration*

MINTZ & GOLD LLP
Steven G. Mintz (SM 5428)
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, NY 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
*Attorneys for Plaintiff*
*VCG Special Opportunities Master Fund Ltd.,*
*(f/k/a CDO Plus Master Fund Ltd.)*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

CDO PLUS MASTER FUND LTD.,                    :

                                              :        **07 Civ. 11078 (LTS)(AJP)**

                    Plaintiff,                :

                                              :        **NOTICE OF DEPOSITION OF**

          - against -                         :        **TOM EDWARDS**

                                              :

WACHOVIA BANK,                                :        **ECF CASE**

NATIONAL ASSOCIATION,                         :

                                              :

                    Defendant.                :

-----------------------------------------------------------X

    **PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, Plaintiff VCG Special Opportunities Master Fund, Ltd. (f/k/a CDO Plus

Master Fund Ltd.), by and through its counsel, will take the deposition(s) upon oral

examination of Tom Edwards, having a business address at Wachovia Capital Markets, LLC,

301 S. College St – NC0602, Charlotte, NC 28202, at the offices of Plaintiff's counsel, Mintz &

Gold LLP, 470 Park Avenue South, 10th Floor North New York, NY 10016, commencing at 9:00

a.m. on August 6, 2008, or some other place as the parties agree on.

The deposition will be taken before a notary public or other individual authorized to administer oaths and will be recorded by stenographic and videographic means.

Dated:    New York, New York
          May 9, 2008

**MINTZ & GOLD LLP**

*Terence W. McCormick*
—————————————————————
Steven G. Mintz (SM 5428)
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, NY 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
*Attorneys for Plaintiff*
*VCG Special Opportunities Master Fund Ltd.,*
*(f/k/a CDO Plus Master Fund Ltd.)*

**To:**   **HUNTON & WILLIAMS LLP**
          Patrick L. Robson, Esq.
          Bank of America Plaza, Suite 3500
          101 South Tryon Street
          Charlotte, North Carolina 28280

          Shawn Patrick Regan, Esq.
          200 Park Avenue
          New York, New York 10166-0091
          *Attorneys for Defendant*
          *Wachovia Bank, N.A.*

2

*__Exhibit E to Regan Declaration__*

MINTZ & GOLD LLP
Steven G. Mintz (SM 5428)
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, NY 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
*Attorneys for Plaintiff*
*VCG Special Opportunities Master Fund Ltd.,*
*(f/k/a CDO Plus Master Fund Ltd.)*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

CDO PLUS MASTER FUND LTD.,                  :
                                             :    **07 Civ. 11078 (LTS)(AJP)**
                      Plaintiff,             :
                                             :    **NOTICE OF DEPOSITION OF**
            - against -                      :    **WILLIAM McANDREWS**
                                             :
WACHOVIA BANK,                               :    **ECF CASE**
NATIONAL ASSOCIATION,                        :
                                             :
                      Defendant.             :
------------------------------------------------------------X

     **PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Federal Rules of Civil

Procedure, Plaintiff VCG Special Opportunities Master Fund, Ltd. (f/k/a CDO Plus

Master Fund Ltd.), by and through its counsel, will take the deposition(s) upon oral

examination of William McAndrews, having a business address at Wachovia Capital Markets,

LLC, 301 S. College St – NC0600, Charlotte, NC 28202, at the offices of Plaintiff's counsel,

Mintz & Gold LLP, 470 Park Avenue South, 10th Floor North New York, NY 10016,

commencing at 9:00 a.m. on August 5, 2008, or some other place as the parties agree on.

The deposition will be taken before a notary public or other individual authorized to

administer oaths and will be recorded by stenographic and videographic means.

Dated:     New York, New York
           May 9, 2008

MINTZ & GOLD LLP

*Terence W. McCormick*

Steven G. Mintz (SM 5428)
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, NY 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
*Attorneys for Plaintiff*
*VCG Special Opportunities Master Fund Ltd.,*
*(f/k/a CDO Plus Master Fund Ltd.)*


To:     **HUNTON & WILLIAMS LLP**
        Patrick L. Robson, Esq.
        Bank of America Plaza, Suite 3500
        101 South Tryon Street
        Charlotte, North Carolina 28280

        Shawn Patrick Regan, Esq.
        200 Park Avenue
        New York, New York 10166-0091
        *Attorneys for Defendant*
        *Wachovia Bank, N.A.*

2

*__Exhibit F to Regan Declaration__*

MINTZ & GOLD LLP
Steven G. Mintz (SM 5428)
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, NY 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
*Attorneys for Plaintiff*
*VCG Special Opportunities Master Fund*
*(f/k/a CDO Plus Master Fund Ltd.)*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

| | | |
|---|---|---|
| CDO PLUS MASTER FUND LTD., | : | |
| | : | **07 Civ. 11078 (LTS)(AJP)** |
| Plaintiff, | : | |
| | : | **ECF CASE** |
| - against - | : | |
| | : | |
| WACHOVIA BANK, | : | |
| NATIONAL ASSOCIATION, | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------------X

## PLAINTIFF'S INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Plaintiff, VCG Special

Opportunities Master Fund, Ltd., formerly known as CDO Plus Master Fund Ltd., by its

attorneys Mintz & Gold LLP, hereby submits the following:

**A.    The name and, if known, the address and telephone number of each**

**individual likely to have discoverable information that the disclosing party may use to**

**support his claim or defenses, unless solely for impeachment, identifying the objects of the**

**information:**

**Vanquish Capital Group:**

Donald S. Uderitz
Jorge Rodriguez-Lugo
David Zierath
David A. Jefferds
Alyssa D'Amore
Andrea Miller
Jonnathan Wong
Robert H. Fasulo, Esq.

All of the foregoing persons are located at:
407 SE 1st Street
Delray Beach, FL 33483
(561) 330-6999

The foregoing potential witnesses are employees of Vanquish Capital Group, LLC, which

controls VCG Special Opportunities Master Fund, Ltd. Mr. Uderitz has personal knowledge

regarding the negotiation, execution and performance of the swap agreement at issue in this case.

Mr. Rodriguez is the President of Vanquish Capital Group. Mr. Rodriguez and the other

employees have personal knowledge regarding Wachovia's demands for collateral during 2007.

Jonnathan Wong was the trader at Vanquish who discussed the initial margin and pricing of the

swap with the trading desk at Wachovia.

**Wachovia:**

Michelle Cenis, Esq.
Legal Division
Wachovia Bank, N.A.
375 Park Avenue, Mailcode 4084
New York, NY 10152-0005
Tel (212) 214-8123

Julie Caperton
Wachovia Capital Markets LLC
1525 West W.T. Harris Boulevard
Charlotte, NC 28262-8522

2

Ms. Cenis corresponded with Plaintiff's General Counsel, Robert H. Fasulo, Esq.,

regarding Plaintiff's objections to Wachovia's requests for collateral and participated in one or

more conference calls addressed to that issue.

      Trading personnel

Thomas Edwards
Brian Farrell
Sergei Zagin
Michael Thompson
Thomas Wickwire
Grant Duff-Cole

Wachovia Capital Markets LLC
1525 West W.T. Harris Boulevard
Charlotte, NC 28262-8522

or

301 South College Street
Charlotte, NC 28288
(704) 715-7059

The foregoing Wachovia employees negotitated or are otherwise familiar with the details

of the CDS contract.

    CDS ISDA Swap Contract Negotiation and Execution

William McAndrews
Wachovia Capital Markets LLC
301 South College Street
Charlotte, NC 28288
(704) 715-7059

Alexis S. Alpert
Wachovia Bank N.A.
375 Park Avenue
Mailstop NY4084
New York, NY 10152-0005
(212) 214-8138

3

In addition to participating in the negotiation of the swap contract at issue in this case,

Mr. McAndrews and Mr. Edwards participated in conference calls with Plaintiff during August

2007 and subsequently regarding the validity of Wachovia's mark-to-market of the Forge Class

B Notes and Wachovia's demand for margin. Ms. Alpert executed and delivered the swap

documents as well as the notices of default, early termination and set-off.

Credit Personnel

Pamela Lieberman
Wachovia Securities, Corporate and Investment Banking Services
301 South College Street
Charlotte, NC 28288

Tel: (704) 383-3936

Sergei Zagin
Wachovia Bank
301 South College Street
Charlotte, NC 28288

Mr. Zagin corresponded with Plaintiff's principals regarding the mark-to-market of the

reference obligation. Mr. Zagin obtained valuations of the Forge Class B Notes from four

market makers in connection with Plaintiff's dispute regarding Wachovia's entitlement to

margin.

**Third Parties:**

Richard Rizzo (Deutsche Bank Securities)
Shyam Sunder (Merrill Lynch)
Christopher Creed (Goldman, Sachs & Co.)
Igor Axenov (RBS Greenwich Capital)

(Addresses and telephone contact information unknown).

The foregoing persons were consulted by Wachovia as reference market makers and

provided market quotations pursuant to Plaintiff's invocation of the dispute resolution provisions

of the ISDA Master Agreement.

4

**B.    A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses unless solely for impeachment.**

The Confirmation Letter, ISDA Master Agreement, Schedule and Credit Support Annex are in each party's possession. Related documents would include trade documentation; e-mail correspondence concerning the negotiation of the independent amount; correspondence relating to Wachovia's subsequent demands for variation margin; correspondence regarding Wachovia's mark-to-market of the position; Plaintiff's dispute regarding the accuracy of Wachovia's valuation of the reference obligation; and Plaintiff's own data regarding the proper valuation of the reference obligation. Such documents are located at the offices of counsel for the Plaintiff and in Plaintiff's offices in Delray Beach, Florida, and will be made available for inspection by Defendant upon request.

**C.    A computation of any category of damages claimed by the disclosing party making available for inspection and copying as under Fed. R. Civ. P. 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including material bearing on the nature and extent of injuries suffered.**

Plaintiff has been damaged in the amount of the collateral that Defendant has improperly seized, *i.e.*, $8,920,000, plus interest thereon; the improperly withheld margin interest and fixed payments on the swap since Wachovia issued the notice of default and suspended its performance under the swap transaction. Plaintiff's damages further include the lost opportunity

for income from the trading of its investors' funds arising from the unnecessary collection of collateral during the course of the swap transaction.

Plaintiff reserves the right to revise its damages calculation upon the acquisition of further information.

**D.     For inspection and copying under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.**

Not applicable.

Plaintiff has not yet engaged an expert in this case, but will make the disclosures required by Rule 26 at the appropriate time.

Plaintiff reserves the right to supplement this disclosure upon further discovery in this action.

\* \* \* \* \* \* \*

Dated: New York, New York
       April 4, 2008

MINTZ & GOLD LLP

*Terence W. McCormick*

Steven G. Mintz (SM 5428)
Terence W. McCormick (TM 2713)
470 Park Avenue South
10th Floor North
New York, NY 10016-6819
Tel: (212) 696-4848
Fax: (212) 696-1231
mintz@mintzandgold.com
mccormick@mintzandgold.com
*Attorneys for Plaintiff*
*VCG Special Opportunities Master Fund Ltd.,*
*(f/k/a CDO Plus Master Fund Ltd.)*

To:    **HUNTON & WILLIAMS LLP**
       Patrick L. Robson, Esq.
       Bank of America Plaza, Suite 3500
       101 South Tryon Street
       Charlotte, North Carolina 28280

       Shawn Patrick Regan, Esq.
       200 Park Avenue
       New York, New York 10166-0091
       *Attorneys for Defendant*
       *Wachovia Bank, N.A.*