UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

Wachovia Bank, National Association and
Wachovia Capital Markets LLC,

                            Plaintiffs,

                  -against-

VCG Special Opportunities Master Fund, Ltd.
(f.k.a. CDO Plus Master Fund Ltd.),

                      Defendant.

------------------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:
:

08 CV 5655

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

---

SHAWN PATRICK REGAN
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1000

-and-

PATRICK L. ROBSON
HUNTON & WILLIAMS LLP
Bank of America Plaza
101 S. Tyson Street, Suite 3500
Charlotte, NC 28280
(704) 378-4700

*Attorneys for Plaintiffs*
*Wachovia Bank, National Association and*
*Wachovia Capital Markets LLC*

# TABLE OF CONTENTS

**Page**

Table of Authorities ......................................................................................................... II

Preliminary Statement ....................................................................................................... 1

Statement of facts .............................................................................................................. 2

    I.      The Credit Default Swap Between CDO Plus and Wachovia ...................... 2

    II.    CDO Plus Files a Lawsuit to Avoid Its Obligations Under
           the CDS Trade. ................................................................................................ 3

    III.   CDO Plus Makes an Arbitration Demand Seeking
           Resolution of the Same Dispute. ................................................................... 5

Argument ........................................................................................................................... 6

    A.    Standard Of Review. ...................................................................................... 8

    B.    WCM Will Suffer Immediate, Irreparable Harm
           If Interim Relief Is Not Granted. ................................................................. 8

    C.    Plaintiffs Are Likely to Succeed on the Merits. ......................................... 9

    D.    The Balance of Hardships Favor Plaintiffs. ............................................... 15

Conclusion ....................................................................................................................... 16

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                      <u>Page</u>

*Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran,*
445 F.3d 121 (2d Cir. 2006)...........................................................................7

*AT & T Techs. v. Commc'ns Workers of Am.,*
475 U.S. 643 (1986)..................................................................................7, 10

*Bank Julius Baer & Co. v. Waxfield Ltd.,*
424 F.3d 278 (2d Cir. 2005)...........................................................................9

*Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.,*
No. 08 Civ. 02152(PKL), 2008 WL 759353 (S.D.N.Y. Mar. 20, 2008) ...................7, 10

*Brenntag Int'l Chemicals v. Bank of India,*
175 F.3d 245, 249 (2d Cir. 1999).....................................................................8

*CDO Plus Master Fund Ltd. v. Wachovia Bank, National Association,*
Civil Action No. 07 CV 11078 ......................................................................1, 3

*Citigroup Global Markets Inc. v. VCG Special Opportunities Master Fund Ltd. fka CDO
Plus Master Fund Ltd.,*
08 CV-5520 (BSJ)........................................................................................6

*Doctor's Assocs., Inc. v. Distajo,*
107 F.3d 126 (2d Cir. 1997)..........................................................................12

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995)......................................................................................7

*Hamilton Watch Co. v. Benrus Watch Co.,*
206 F.2d 738 (2d Cir. 1953)...........................................................................8

*Herbert J. Sims & Co., Inc. v. Roven,*
No. C07-04777 MJJ, 2008 WL 686591 (N.D. Cal. March 7, 2008) ........................7, 11

*Home Gas Corp. v. Walter's of Hadley, Inc.,*
532 N.E.2d 681 (Mass. 1989).........................................................................13

*In re Baldwin-United Corp.,*
770 F.2d 328 (2d Cir. 1985)......................................................................13, 15

*In re Corrugated Container Antitrust Litig.,*
659 F.2d 1332 (5th Cir. 1981) *cert. denied,* 456 U.S. 936 (1982)...............................14

*In re Enron Corp.,*
364 B.R. 489 (Bankr. S.D.N.Y. 2007)..............................................................12

*In re Waldron*, 461 N.E.
2d. 273 (N.Y. 1984) ............................................................................................10

*Int'l Trust Co. of Bermuda, Ltd.* v. *Fahnestock & Co.*,
No. 95 Civ. 3856, 1995 WL 606275 (S.D.N.Y. Oct. 12, 1995) ..........................8

*Masefield AG* v. *Colonial Oil Indus., Inc.*,
No. 05 Civ. 2231, 2005 WL 911770 (S.D.N.Y. Apr. 18, 2005) ...........................9

*Md. Cas. Co.* v. *Realty Advisory Bd. on Labor Relations*,
107 F.3d 979 (2d Cir. 1997) ................................................................................9

*Merrill Lynch Inv. Managers* v. *Optibase, Ltd.*,
337 F.3d 125 (2d Cir. 2003) ................................................................................9

*Mount Ararat Cemetery* v. *Cemetery Workers and Greens Attendants Union, Local 365*,
975 F. Supp. 445 (E.D.N.Y. 1997) .....................................................................8

*Opals on Ice Lingerie* v. *Bodylines Inc.*,
320 F.3d 362 (2d Cir. 2003) ..............................................................................10

*PaineWebber Inc.* v. *Bybyk*,
81 F.3d 1193 (2d Cir. 1996) ..............................................................................10

*Painewebber Inc.* v. *Hofmann*,
984 F.2d 1372 (3d Cir. 1993) ..............................................................................7

*Penrod Mgmt. Group* v. *Stewart's Mobile Concepts, Ltd.*,
No. 07 Civ. 10649 (JGK), 2008 WL 463720 (S.D.N.Y. Feb. 19, 2008) ............7

*Polur v. Raffe*,
912 F.2d 52 (2d Cir. 1990) ................................................................................14

*S & R Co. of Kingston* v. *Latona Trucking, Inc.*,
159 F.3d 80 (2d Cir. 1998) ................................................................................12

*Scher* v. *Bear Stearns & Co.*,
723 F. Supp. 211 (S.D.N.Y. 1989) ...................................................................10

*Stevenson v. Tycol (US) Inc.*,
No. 04-CV-4037, 2006 WL 2827635 (S.D.N.Y. Sept. 29, 2006) ......................13

*Tellium, Inc.* v. *Corning Inc.*,
No. 03 Civ. 8487(NRB), 2004 WL 307238 (S.D.N.Y. Feb. 13, 2004) ...........8, 15

*Thomson-CSF, S.A.* v. *Am. Arbitration Ass'n*,
64 F.3d 773 (2d Cir. 1995) ................................................................................10

*Thyssen, Inc.* v. *Calypso Shipping Corp., S.A.*,
310 F.3d 102 (2d Cir. 2002) ..............................................................................12

*Time Warner Cable Co. v. Bloomberg L.P.*,
118 F.3d 917 (2d Cir. 1997) ................................................................................8

*Tishman Constr. Corp. of N.Y.* v. *Muccioli*,
2008 WL 426229 (S.D.N.Y. Feb. 15, 2008)...................................................7

*United Steelworkers of Am.* v. *Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960)...................................................................................7, 10

*VCG Special Opportunities Master Fund Limited v. Citibank, N.A.*,
08 CV 01563 (S.D.N.Y.) (BSJ) ....................................................................4,6

*VCG Special Opportunities Master Fund LTD. f/k/a CDO Plus Master Fund Ltd. v.*
*Wachovia Capital Markets LLC*,
FINRA Dispute Res. No. 08-01420 .................................................................1

*World Group Secs.* v. *Ko*,
No. C035055 MJJ(EDL), 2004 WL 1811145 (N.D. Cal. Feb. 11, 2004).............7, 11, 15

Plaintiffs Wachovia Bank, National Association ("Wachovia") and Wachovia Capital Markets, LLC ("WCM") respectfully submit this Memorandum of Law in Support of their Motion for an order Pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendant CDO Plus Master Fund, Ltd., (n.k.a. VCG Special Opportunities Master Fund Ltd.) ("Defendant" or "CDO Plus") from proceeding with an arbitration Defendant has initiated against WCM before the Financial Industry Regulatory Authority ("FINRA"), entitled *VCG Special Opportunities Master Fund LTD. f/k/a CDO Plus Master Fund Ltd. v. Wachovia Capital Markets LLC*, FINRA Dispute Res. No. 08-01420 (the "FINRA Arbitration") during the pendency of the current action in which Plaintiffs Wachovia and WCM seek, among other things, an order permanently enjoining Defendant from proceeding with the FINRA Arbitration.

## PRELIMINARY STATEMENT

On November 28, 2007, Defendant filed suit against Wachovia Bank in an effort to avoid Defendant's obligation under a credit default swap agreement between it and Wachovia Bank. The case was removed to federal court, captioned *CDO Plus Master Fund Ltd. v. Wachovia Bank, National Association*, Civil Action No. 07 CV 11078; and assigned to the Honorable Laura Taylor Swain.

Defendant now seeks to circumvent this Court's authority to adjudicate the claims before it by opening a "second front" through a FINRA Arbitration Demand against Wachovia Bank's affiliate, Wachovia Capital Markets. The Arbitration demand seeks damages from Wachovia Capital Markets over the same single transaction that is at issue before this Court – a credit default swap transaction between CDO Plus and Wachovia Bank, N.A. (the "CDS Trade").

As an initial matter, Defendant's arbitration demand is improper because no arbitration agreement or customer relationship exists between Defendant and Wachovia Capital Markets.

As such, Defendant has no basis for initiating a FINRA arbitration and Defendant should be enjoined from proceeding with the FINRA arbitration.

Further, Defendant's arbitration demand is a transparent attempt to force Wachovia to litigate the same factual dispute simultaneously in two different jurisdictions. In addition to the unreasonable burden placed upon Wachovia, Defendant's arbitration demand threatens to defeat or impair the proceeding before this Court, which has been pending for nearly seven months and in which fact discovery is set to close on September 30, 2008.

Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, provide this Court with the authority to enjoin any proceeding that would interfere with the Court's ability to adjudicate claims before it. Because Wachovia and WCM are likely to prevail on the merits of their arbitratility claim and because the FINRA Arbitration threatens to thwart the jurisdiction of this Court, Plaintiffs respectfully request that the Court preliminarily enjoin the FINRA Arbitration pending resolution of the claims set forth in Plaintiffs' Original Complaint.

## **STATEMENT OF FACTS**

I.    <u>The Credit Default Swap Between CDO Plus and Wachovia.</u>

In May of 2007, Defendant, a $58 million hedge fund, entered into a credit derivative swap transaction with Wachovia Bank (the "CDS Trade" or "Transaction"). (Dkt. 1, ¶¶ 10, 13-14.)

Under the terms of the written agreement, CDO Plus would receive periodic payments over the term of the derivative instrument (in this case, a credit default swap). (*Id.* ¶ 17.) If, however, certain events (including events of default) occurred, CDO Plus would be required to make payments to Wachovia. (*Id.*)

As security against the risk that CDO Plus would be unable to meet its obligations to make payments, Wachovia was allowed to, and did, demand that CDO Plus provide Wachovia with collateral. (*Id.* ¶ 18.) Over the life of the Transaction, the sum of collateral that Wachovia was allowed to demand and hold was an independent amount equal to $750,000 paid initially, plus an additional amount that fluctuated depending upon changes in the replacement cost of the credit derivative swap. (*Id.*)

Over the summer and fall of 2007 the market value of a credit derivative swap transaction similar to the transaction between CDO Plus and Wachovia (*i.e.*, Wachovia's replacement cost) increased dramatically. Under the terms of the CDS Trade, Wachovia was, therefore, entitled to demand additional amounts of collateral from CDO Plus. (*Id.* ¶ 19.) Until the last such demand was made, CDO Plus met its obligations under the Agreement, and, by November 2, 2007, had transferred $8.92 million of collateral to Wachovia. (*Id.*)

II.    <u>CDO Plus Files a Lawsuit to Avoid Its Obligations Under the CDS Trade.</u>

In late November 2007, CDO Plus attempted to avoid further contractual obligations by filing suit against Wachovia in New York State Supreme Court. (*See* Docket from *CDO Plus Master Fund Ltd. v. Wachovia Bank, National Association*, Civil Action No. 07 CV 11078 (LTS) (hereinafter "SDNY Dkt. _"), No. 1.) Wachovia removed the case to this Court. (*See id.* 1.) CDO Plus filed an Amended Complaint on January 15, 2008. (*Id.* 11.)

CDO Plus's Amended Complaint -- which asserts claims for fraud, mistake, breach of contract, breach of implied covenant of good faith, unjust enrichment, specific performance, and conversion -- alleges, among other things, that Wachovia fraudulently induced CDO Plus into the CDS Trade on unfavorable terms. (*Id.*) Specifically, CDO Plus claims that "Wachovia fraudulently induced [CDO Plus] to enter into a credit derivative transaction, or 'swap,' through the offer of more favorable margin terms than Wachovia actually intended to honor." (*Id.* ¶ 1.)

3

CDO Plus also claims that Wachovia demanded from CDO Plus unreasonable amounts of collateral because Wachovia was "[p]erhaps in a panic over recent turmoil in the debt markets connected to the sub-prime mortgage lending crisis." (*Id.*)

In the alternative, CDO Plus's Amended Complaint alleges that the Agreement should be rescinded because there was no meeting of the minds. (*Id.* ¶ 2.) CDO Plus claims that "Wachovia knew or should have known" that CDO Plus "entered into the transaction with the understanding that it was selling risk protection ***against a credit default only***" and therefore did not believe that it was required to transfer collateral to Wachovia over the course of the Transaction. (*Id.* (emphasis in original).)[1]

The parties presently are engaged in fact discovery in this case, which is scheduled to be completed by September 30, 2008. (SDNY Dkt. 16.) And, pursuant to Magistrate Judge Peck's Order, dated May 1, 2008 (as modified at the June 9 scheduling conference), the parties are scheduled to participate in a settlement conference on July 24, 2008. (SDNY Dkt. 23.) (*See* Declaration of Shawn Patrick Regan, dated June 26, 2008 ("Regan Decl.") ¶ 4.)

---

[1]    CDO Plus filed virtually the same lawsuit against Citibank arising out of a similar CDS trade. (*See VCG Special Opportunities Master Fund Limited v. Citibank, N.A.*, 08 CV 01563 (S.D.N.Y.) (BSJ), Dkt. 1.). As here, in the *Citibank* case, CDO Plus seeks to rescind a credit derivative swap that obligated it to pay more than $10 million, claiming it was again duped into the transaction on unfavorable terms.

And CDO Plus similarly initiated a FINRA Arbitration demand just recently against Citigroup's broker dealer affiliate, based upon the CDS Trade at issue in its Southern District lawsuit against Citigroup. *See Citigroup Global Markets Inc. v. VCG Special Opportunities Master Fund Ltd. fka CDO Plus Master Fund Ltd.*, 08 CV-5520 (BSJ), Dkt. 1. Like WCM, Citigroup Global Markets has brought an action to enjoin VCG's attempt to arbitrate a dispute that is already pending before the Court. *See VCG Special Opportunities Master Fund Limited v. Citibank, N.A.*, 08 CV 01563 (S.D.N.Y.) (BSJ), Dkt. 1. Citigroup Global Markets motion for a preliminary injunction is presently pending before The Honorable Barbara S. Jones.

III.    CDO Plus Makes an Arbitration Demand
        Seeking Resolution of the Same Dispute.

On May 8, 2008, CDO Plus initiated a FINRA Arbitration over the CDS Trade. (*See*

Regan Decl. Ex. B.) Attached to the FINRA Dispute Resolution Arbitration Notice, is CDO

Plus's Statement of Claim. (*Id.* Ex. B.) No arbitration agreement exists between CDO Plus and

WCM, and CDO Plus is not a customer of WCM.[2] (*See* Declaration of Melissa Helfrich, dated

June 24, 2008 ("Helfrich Decl.") ¶ 4; Dkt. 1, ¶ 16.)

Alleging claims for breach of fiduciary duties, negligence, negligent supervision,

violations of customer agreements, violations of the implied covenant of good faith and fair

dealing, fraud, constructive fraud, violations of FINRA Conduct Rules, and "any other legal

theories under federal and state law or FINRA practice that may be applicable," CDO Plus seeks

compensatory and punitive damages from WCM for exactly the same conduct for which it seeks

damages from Wachovia in the SDNY Litigation. (*Compare* SDNY Dkt. 11 (Amended

Complaint), with Regan Decl. Ex. B.)

Specifically, CDO Plus purports to bring its arbitration claims against WCM "in

connection with an investment contract product sold to [CDO Plus] through Wachovia Capital

on or about May 27, 2007, called a 'credit default swap', resulting in almost $10,000,000 in

compensatory damages to [CDO Plus]." (Regan Decl. Ex. B at 1.) As with CDO Plus's

Amended Complaint in the SDNY Litigation, its Statement of Claim alleges that "Wachovia

Capital . . . fail[ed] to disclose certain inside information known by Wachovia Capital through

proprietary sources that the investment contract . . . was an unfair and exceptionally risky deal."

(*Id.* at 3; *compare* with SDNY Dkt. 11 ¶ 67 (alleging that Wachovia's representations were

---

[2]    Defendant's investment advisor rekon advisors llc was, at one time, a customer of WCM. Rekon advisors llc (n.k.a. Vanquish Advisors), however, is not a party to either the SDNY Litigation or the FINRA Arbitration. Nor is it a party to the CDS Trade at issue.

"false and known to be false by Wachovia when they were made, for the purpose of enticing [Defendant] into making the swap").) And, like CDO Plus's Amended Complaint in the SDNY Litigation, its Statement of Claim asserts that Plaintiffs were motivated to defraud CDO Plus because Plaintiffs "knew they were about to experience billions of dollars in losses, and were looking to predatorily 'steal' from other accounts." (*Id.* at 4; *compare* with SDNY Dkt. 11 ¶ 1 (alleging that Wachovia intended to defraud CDO Plus because it was "[p]erhaps in a panic over recent turmoil in the debt markets connected to the sub-prime mortgage lending crisis.").)

Although CDO Plus claims that its arbitration demand is brought against a different entity -- WCM, not Wachovia -- and that its demand is based upon WCM's "unique obligations as a FINRA member" these two actions seek the same damages, seek discovery from the same witnesses, and are based upon the same Transaction. Indeed, in the SDNY Litigation, CDO Plus seeks the majority of its discovery from WCM employees, not Wachovia employees. (*See e.g.*, Regan Decl. Exs. C - E (Deposition Notices of WCM employees S. Zagin, T. Edwards, and W. McAndrews). And the majority of the individuals disclosed to CDO Plus in Wachovia's Rule 26(a)(1)(A)(i) disclosure were employees of WCM, not Wachovia. (*Id.* Ex. F.)

WCM's response to CDO Plus's Statement of Claim is due on June 27, 2008, however, the parties have consented to stay the FINRA Arbitration until this Court's resolution of the pending motion.

## ARGUMENT

Arbitration of CDO Plus's claims is inappropriate because no customer relationship exists between CDO Plus and WCM giving rise to a contractual obligation to arbitrate the claims

at issue here.[3]  The FINRA Arbitration demand is a transparent attempt to thwart jurisdiction over litigation that has been proceeding before this Court for nearly seven months (as of June 25, 2008, the date of the filing of this motion).

The issue of arbitrability "is undeniably an issue for judicial determination." *AT & T Techs.* v. *Commc'ns Workers of Am.*, 475 U.S. 643 (1986); *see also First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938 (1995); *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d at 121.  Federal courts routinely grant preliminary injunctive relief when a party seeks to arbitrate a non-arbitrable dispute. *See, e.g., Barrack, Rodos & Bacine* v. *Ballon Stoll Bader & Nadler, P.C.*, No. 08 Civ. 02152(PKL), 2008 WL 759353, at *9 (S.D.N.Y. Mar. 20, 2008); *Penrod Mgmt. Group* v. *Stewart's Mobile Concepts, Ltd.*, No. 07 Civ. 10649 (JGK), 2008 WL 463720, at *4 (S.D.N.Y. Feb. 19, 2008); *Tishman Constr. Corp. of N.Y.* v. *Muccioli*, 2008 WL 426229, at *5 (S.D.N.Y. Feb. 15, 2008).

Indeed, Federal courts have enjoined FINRA arbitrations when there is a serious question as to the arbitrability of the claims at issue. *See, e.g., Herbert J. Sims & Co., Inc. v. Roven*, No. C07-04777 MJJ, 2008 WL 686591, at *7 (N.D. Cal. March 7, 2008) (staying FINRA arbitration because broker-dealer had probable success on merits claim that advisor and investors were not broker-dealer's customers); *World Group Secs.* v. *Ko*, No. C035055 MJJ(EDL), 2004 WL 1811145, *8 (N.D. Cal. Feb. 11, 2004) (stay of NASD arbitration recommended by magistrate judge because there was no basis for arbitrating claims); *see also Painewebber Inc.* v. *Hofmann*,

---

[3]    One of the basic tenets of arbitration law is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am.* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *see also Alliance Bernstein Inv. Research & Mgmt., Inc.* v. *Schaffran*, 445 F.3d 121 (2d Cir. 2006; Domke on Commercial Arbitration § 15.1.

984 F.2d 1372 (3d Cir. 1993) (remanding action to enjoin NASD arbitration to trial court for determination of arbitrability).

A.    Standard Of Review.

The power to issue preliminary injunctive relief exists so that a court "may thereby prevent such a change in the relations and conditions of persons and property as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953). To obtain preliminary injunctive relief, a party must show: (1) the threat of irreparable harm; and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor. *See Brenntag Int'l Chemicals v. Bank of India*, 175 F.3d 245 (2d Cir. 1999); *Time Warner Cable Co. v. Bloomberg L.P.*, 118 F.3d 917 (2d Cir. 1997).

This standard for preliminary injunctive relief is easily met in this case.

B.    WCM Will Suffer Immediate, Irreparable
       Harm If Interim Relief Is Not Granted.

Forcing WCM to arbitrate a non-arbitrable dispute would constitute *per se* irreparable harm. Courts in the Second Circuit have consistently held that "[c]ompelling arbitration of a matter not properly subject to arbitration constitutes 'per se irreparable harm.'" *Tellium, Inc.* v. *Corning Inc.*, No. 03 Civ. 8487(NRB), 2004 WL 307238, *3 (S.D.N.Y. Feb. 13, 2004); *see Mount Ararat Cemetery* v. *Cemetery Workers and Greens Attendants Union, Local 365*, 975 F. Supp. 445 (E.D.N.Y. 1997) (finding that a party "may be presumed to suffer irreparable harm if forced to arbitrate a dispute it did not intend to be subject to arbitration"); *Int'l Trust Co. of Bermuda, Ltd.* v. *Fahnestock & Co.,* No. 95 Civ. 3856, 1995 WL 606275, at *3 (S.D.N.Y. Oct.

12, 1995) (stating that "[a] party that has not agreed to arbitrate a dispute will suffer irreparable harm if it [is] forced to submit to arbitration") (citations omitted)).

Further, allowing the FINRA Arbitration to proceed would impose substantial litigation costs upon WCM, costs it would not be able to recover upon a determination that CDO Plus did not have a right to initiate arbitration. Because such costs are not recoverable in litigation, this is the unusual circumstance where such costs constitute an additional irreparable harm to WCM. *Brenntag*, 175 F.3d at 249 (stating that "perhaps [a] more accurate description of the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *See also Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003) (citing *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979 (2d Cir. 1997)); *Masefield AG v. Colonial Oil Indus., Inc.,* No. 05 Civ. 2231, 2005 WL 911770, at *7 (S.D.N.Y. Apr. 18, 2005).

C.    Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs are likely to succeed on the merits of their underlying claims because: (1) CDO Plus is not a customer of WCM, and, therefore, has no right to initiate an arbitration; and (2) CDO Plus's attempt to open a second front in its attempt to avoid its obligations under the CDS Trade will certainly thwart this Court's jurisdiction over the same factual dispute.

1.    CDO Plus Has No Right To Arbitrate With WCM.

CDO Plus is not a customer of WCM and therefore there is no actual or implied agreement between the parties to arbitrate their disputes. Absent such an agreement, this Court is likely to find that WCM cannot be compelled to arbitrate CDO Plus's claims.

In determining whether a dispute is subject to arbitration, courts must decide: (i) whether parties are bound by an arbitration agreement; and (ii) whether the agreement applies to the

particular controversy.  *See Bank Julius Baer & Co.* v. *Waxfield Ltd.*, 424 F.3d 278 (2d Cir.

2005); *PaineWebber Inc.* v. *Bybyk,* 81 F.3d 1193 (2d Cir. 1996); *Scher* v. *Bear Stearns & Co.,*

723 F. Supp. 211 (S.D.N.Y. 1989) ("It is fundamental that arbitration agreements are creatures of

contract law." (citation omitted)).  A court will find an agreement to arbitrate only if there is

affirmative evidence of intent to create such an obligation.  *See Opals on Ice Lingerie* v.

*Bodylines Inc.,* 320 F.3d 362 (2d Cir. 2003) ("[t]hough the presumption in favor of arbitration is

strong, the law still requires that parties actually agree to arbitration before it will order them to

arbitrate a dispute"); *Bybyk,* 81 F.3d at 1198  ("[u]nless the parties clearly and unmistakably

provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the

court" (quoting *AT&T Technologies,* 475 U.S. at 649)); *In re Waldron,* 461 N.E. 2d. 273 (N.Y.

1984).  "[A] party cannot be required to submit to arbitration any dispute which he has not

agreed to so submit." *Barrack, Rodos & Bacine,* 2008 WL 759353, at *5 (quoting *Thomson-*

*CSF, S.A.* v. *Am. Arbitration Ass'n,* 64 F.3d 773 (2d Cir. 1995) (quoting *United Steelworkers of*

*Am.,* 353 U.S. at 582)).

In addition, FINRA Arbitrations, which are governed by the NASD Code of Arbitration

Procedure, mandate that:

> Parties must arbitrate a dispute under the Code if:
>
> - Arbitration under the Code is either:
>
>     (1) Required by a written agreement, or
>
>     (2) Requested by a customer;
>
> - The dispute is between a customer and a member or associated person of a member; and
>
> - The dispute arises in connection with the business activities of the member . . . .

NASD Code of Arbitration Procedure for Customer Disputes, Rule 12200.

CDO Plus's Statement of Claim, asserts that "[CDO Plus] was a customer of Wachovia Capital through written and oral agreements and a course of business dealings, as well as through [CDO Plus's] investment advisor, Vanquish Advisors LLC, formerly known as Rekon Advisors LLC." But this allegation is demonstrably and plainly incorrect. (Regan Decl. Ex. B.) CDO Plus will not be able to establish either the existence of a customer agreement or that it was ever a customer of WCM.

First, there is no written agreement between CDO Plus and WCM. (*See* Helfrich Decl. ¶ 4) Second, CDO Plus's allegation regarding the existence of an "oral" agreement to arbitrate is entirely conclusory and unsupported by any plausible factual bases.[4] Third, CDO Plus's theory that a customer relationship is created between WCM and CDO Plus through a "course of business dealings" between WCM and <u>another</u> entity — Vanquish Advisors — is squarely contradicted by relevant case law. To the contrary, where the purported claimant did not deal directly with the FINRA member, but instead made investments through an "investment advisor," no customer relationship exists sufficient to entitle the claimant to arbitrate its claims against a FINRA member. *See Sims & Co., Inc.*, 2008 WL 686591, at *7 (staying FINRA arbitration where "Defendants did not invest directly with Plaintiff . . . . Rather, each of the investors were clients of . . . their investment advisor").[5]

---

[4]    Because WCM disputes the existence of any oral agreement (*see* Dkt. 1 ¶ 16.), the issue of arbitrability is properly before this Court. And a FINRA arbitration should be preliminarily enjoined where the broker is likely to succeed in challenging the arbitrability of the claims. *See e.g.*, *Sims & Co.*, 2008 WL 686591, at *7; *World Group Secs.*, 2004 WL 1811145, *8.

[5]    WCM is also likely to succeed on the merits because CDO Plus will be unable to show that the CDS Trade that is the subject of the dispute was "in connection with the business activities of" WCM. Rather, as acknowledged in CDO Plus's Amended Complaint and its Statement of Claim, the CDS Trade was an arms-length transaction between CDO Plus and Wachovia. (*See* SDNY Dkt. 11 ¶¶ 12, 14; Regan Decl. Ex. B.) Indeed, the CDS Trade included a "non-reliance" provision, which the parties negotiated and which specifically disclaimed

11

Finally, even if CDO Plus could establish a customer relationship with WCM, which it cannot, CDO Plus waived any right to arbitrate when it sought to resolve its dispute regarding the CDS Trade in court against Wachovia. *See, e.g., Doctor's Assocs., Inc.* v. *Distajo*, 107 F.3d 126 (2d Cir. 1997) (noting prejudice to defendant when a party litigates and then seeks to arbitrate the same issues); *In re Enron Corp.*, 364 B.R. 489 (Bankr. S.D.N.Y. 2007) (noting that parties waive their arbitration rights when they engage in litigation that results in prejudice to the opposing party). "[W]aiver is more likely to be found . . . the more a party avails itself of the opportunity to litigate." *Thyssen, Inc.* v. *Calypso Shipping Corp., S.A.,* 310 F.3d 102 (2d Cir. 2002).

Wachovia has expended time and resources over nearly seven months, including extensive discovery costs, defending CDO Plus's claims in the SDNY Litigation. If the FINRA Arbitration is allowed to proceed, Wachovia and WCM will be forced to defend claims arising out of exactly the same facts in two separate forums. Discovery, dispositive motions, and trial on any remaining claims will be entirely duplicative. Wachovia would thus be forced to prevail on the merits in two separate cases, whereas CDO Plus would need to prevail in only one forum to obtain the damages it seeks through duplicative proceedings. Allowing CDO Plus to obtain a second-bite-at-the-apple in this manner is inherently prejudicial and its effort should be rejected by this Court. *See S & R Co. of Kingston* v. *Latona Trucking, Inc.*, 159 F.3d 80 (2d Cir. 1998) (affirming lower court finding that prior litigation amounted to waiver of arbitration rights, reasoning that parties should not be able to "waste scarce judicial time and effort and hamper judges' authority to control the course of proceedings before them . . . and then demand

---

reliance upon the type of advice for which VCG now claims WCM should be held liable. (*See* SDNY Dkt. 20, Ex. 2, Part 5(c).)

arbitration. . . . [and thus test] the water before taking the swim," quoting *Home Gas Corp.* v. *Walter's of Hadley, Inc.*, 532 N.E.2d 681 (Mass. 1989)).

        2.      **The Court May Enjoin Proceedings**
                      <u>**That Interfere with Its Jurisdiction.**</u>

Federal courts have broad authority, pursuant to the All Writs Act, to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This authority is applicable "[w]hen a federal court has jurisdiction over its case in chief" and may include injunctive relief where it is "necessary to prevent [another proceeding] from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985).[6]

Where, as here, Defendant has initiated a subsequent, parallel proceeding for the purpose of impeding the Court's ability to adjudicate the claims before it, the Court has the authority to enjoin the second proceeding. The FINRA Arbitration impedes the Court's jurisdiction in the SDNY Litigation, not merely because it is a parallel proceeding, but because it is an attempt to: (i) broaden the scope of discovery beyond what will be permitted in the SDNY Litigation; and (ii) obtain a judgment against WCM before resolution of the SDNY Litigation, one which, if favorable to CDO Plus, would undoubtedly be used as leverage in the SDNY Litigation.

CDO Plus acknowledges that it intends to seek discovery of all "internal analyses or computer models" in WCM's possession "about the impending meltdown in the credit/mortgage markets," despite its failure to allege any facts which would establish any connection between this alleged "meltdown" and the CDS Trade at issue. (*Id.* at 10.) CDO Plus further asserts that it

---

[6]      "It is clear . . . that a court may use the All Writs Act to prevent arbitrators from deciding issues within the court's jurisdiction." *Stevenson v. Tycol (US) Inc.,* No. 04-CV-4037, 2006 WL 2827635, at *6 (S.D.N.Y. Sept. 29, 2006).

is entitled to discover, "in Nixonian terms, what did Wachovia Capital know, and when did it

know it." (*Id.*)  Such efforts will, at a minimum, undermine, potentially duplicate and interfere

with efficient discovery in the SDNY Litigation and the rights of Wachovia to obtain resolution

of the claims in the SDNY Litigation — including Wachovia's Counterclaims. *See Polur v.

Raffe,* 912 F.2d 52 (2d Cir. 1990), ("[t]he equity power of a court to give injunctive relief against

vexatious litigation is an ancient one which has been codified in the All Writs Statute.") (citation

omitted).  *See also In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332 (5th Cir. 1981)

*cert. denied*, 456 U.S. 936 (1982) (enjoining state court proceeding where "the plaintiffs'

attorneys had taken and manifested an intention to continue to take, actions threatening [the

federal] court's exercise of its proper jurisdiction and the effectuation of its judgments, by filing

and threatening to file duplicative and harassing litigation in the courts of various states and by

seeking therein orders disrupting the proceedings in the multi-district case.") (citation and

internal quotation marks omitted).

The parties to the SDNY Litigation are well into discovery and reasonably expect to close

fact discovery on September 30, 2008.  Allowing the FINRA Arbitration would effectively force

Wachovia to incur the burden, expense and displacement of resources from discovery in the

SDNY Litigation to focus instead on expanded and duplicative discovery for the arbitration.

CDO Plus has acknowledged in its Statement of Claim that there will be "overlap in the damages

sought in the New York litigation against a bank and this arbitration against a broker-FINRA

Member," but baldly asserts that because the SDNY Litigation "likely [will] go to trial months or

years after this arbitration's final hearing" the preclusive effect of any damages award in the

FINRA arbitration simply "is a matter for a court."  (Regan Decl. Ex. A at 8 n.10.)  CDO Plus's

assertion is correct only insofar as it acknowledges that the FINRA Arbitration likely will

14

"interfer[e] with [this] federal court's consideration or disposition of" the claims at issue in the SDNY Litigation. *In re Baldwin-United Corp.*, 770 F.2d at 335.

For these reasons, WCM will likely succeed in establishing that the FINRA Arbitration will impede, if not undermine, the SDNY Litigation and therefore should be enjoined.

D.    The Balance of Hardships Favor Plaintiffs.

The balance of hardships tips decidedly in Plaintiffs' favor where, as here, if an injunction is not granted WCM will be compelled to incur the burden of defending arbitration claims in the absence of a clear agreement to do so. *See Tellium, Inc.*, 2004 WL 307238, at *8 ("[If] we were to deny the preliminary injunction motion, Tellium would be forced to expend its time and resources to defend itself in an Arbitration to which it may ultimately be determined not to have been a proper party, and any award would accordingly be unenforceable.").

On the other hand, CDO Plus will suffer no hardship other than a procedural delay in its duplicative FINRA Arbitration. But even that hardship is illusory because in the interim, of course, CDO Plus will be pursuing its claims in the SDNY Litigation, and able to obtain via the SDNY Litigation discovery concerning the same actions and facts at issue in the FINRA Arbitration. *World Group Secs.* v. *Ko*, 2004 WL 1811145, *8 (finding the balance of hardships favors plaintiff's motion to preliminarily enjoin arbitration where defendant "has provided no indication as to why relief on [separate claims brought by defendant] would not sufficiently compensate him").

The potential harm to Plaintiff thus outweighs the potential delay imposed on CDO Plus.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order preliminarily enjoining the FINRA Arbitration pending resolution of the claims set forth in Plaintiff's Complaint.

Dated:  New York, New York
June 26, 2008

Respectfully submitted,

HUNTON & WILLIAMS LLP

By: _____
Shawn Patrick Regan
200 Park Avenue, 52nd Floor
New York, New York  10166
(212) 309-1000
sregan@hunton.com

-and-

Patrick L. Robson
HUNTON & WILLIAMS LLP
Bank of America Plaza
101 S. Tyson Street, Suite 3500
Charlotte, North Carolina  28280
(704) 378-4700
probson@hunton.com

*Attorneys for Plaintiffs*
*Wachovia Bank, National Association, and*
*Wachovia Capital Markets LLC*