UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

WACHOVIA BANK, N.A. and
WACHOVIA CAPITAL MARKETS, LLC,

        Plaintiffs,

  -v-                                                                     No. 08 Civ. 5655 (LTS)

VCG SPECIAL OPPORTUNITIES
MASTER FUND, LTD.,

        Defendant.

--------------------------------------------------------x

### OPINION AND ORDER

        Plaintiffs Wachovia Bank, N.A. ("Wachovia Bank") and Wachovia Capital Markets, LLC ("WCM") (collectively, "Plaintiffs") commenced this action against defendant VCG Special Opportunities Master Fund, Ltd. (f/k/a CDO Plus Master Fund, Ltd.) ("VCG" or "Defendant") to enjoin an arbitration proceeding initiated by Defendant before the Financial Industry Regulatory Authority ("FINRA") (the "FINRA Arbitration").[1] The Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332.

        Plaintiffs seek an order enjoining the FINRA Arbitration and declaring that VCG's claims are not subject to arbitration; Defendant counterclaims, seeking an order compelling arbitration pursuant to Section 4 of the Federal Arbitration Act.[2] The parties' cross-motions for

---

    1      <u>VCG Special Opportunities Master Fund, Ltd. f/k/a CDO Plus Master Fund, Ltd v. Wachovia Capital Markets, LLC</u>, FINRA Dispute Resolution Number 08-01420. (Complaint, Ex. 3.)

    2      Section 4 of the Federal Arbitration Act provides, "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such

summary judgment are before the Court. The Court has considered thoroughly the parties' submissions. For the following reasons, Plaintiffs' motion for summary judgment is denied, Defendant's motion for summary judgment is granted, and WCM is directed to arbitrate its dispute with VCG in the FINRA Arbitration.

## BACKGROUND

The following material facts are undisputed unless otherwise indicated. VCG, formerly known as CDO Plus Master Fund Ltd., is an Isle of Jersey hedge fund that, before the initiation of this litigation, had $58 million of assets under management. (Def. 56.1 St. ¶¶ 7, 8.)[3] VCG is controlled by a Board of Directors comprised of Donald Uderitz, Jorge Rodriguez Lugo, George Lorraine, and Nigel Parker. (Def. 56.1 St. ¶¶ 8-9.) VCG has no employees of its own but, rather, operates through employees of Vanquish Capital Group LLC ("Vanquish Capital"), an entity that is also owned by Uderitz, who serves as its Chief Executive Officer and Chief Investment Officer. (Def. 56.1 St. ¶¶ 9-12.) Jonathan Wong was an employee of Vanquish Capital who worked on behalf of VCG. (Def. 56.1 St. ¶ 15.)

Wachovia Bank and WCM are both wholly-owned subsidiaries of Wachovia Corporation. (Def. 56.1 St. ¶ 1.) Wachovia Bank is a national banking association and WCM is a registered broker-dealer and FINRA member. (Def. 56.1 St. ¶ 1.) Thomas Edwards and Scott Williams were employed by WCM as directors on the collateralized debt obligation ("CDO")

---

agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C.A. § 4 (West 2009).

[3]   Citations to the parties' respective S.D.N.Y. Local Civil Rule 56.1 statements ("__ 56.1 St.") incorporate by reference citations to the underlying evidentiary submissions.

trading desk.  (Def. 56.1 St. ¶¶ 3-4.)  According to Edwards, their responsibility was to facilitate trades by being "market makers."  (Edwards Dep. 123:2-10; 125:13; 126:16-23; 127:9-15.)

In May 2007, Wong approached Williams about entering into a credit default swap with VCG.  (Def. 56.1 St. ¶ 19.)  Wong negotiated the terms of the swap with WCM employees Williams and Edwards (Def. 56.1 St. ¶ 20), and VCG and Wachovia Bank ultimately entered into a credit default swap transaction in which the Forge Collateralized Debt Obligation was the reference obligation (the "Trade").  (Def. 56.1 St. ¶¶ 18, 21.)  The documents governing the parties' rights and obligations in the Trade are: the Master Agreement of the International Swap Dealers Association ("ISDA"), dated May 4, 2007; the Schedule to the ISDA Master Agreement, dated May 4, 2007; the 1994 ISDA Credit Support Annex, dated May 4, 2007; and the Confirmation Letter, dated May 30, 2007.  WCM is not a party to any of these agreements.  (Def. 56.1 St. ¶ 23.)

The terms of the Trade provide that Wachovia Bank must pay VCG regular premium payments in exchange for VCG's assumption of the credit risk of the underlying reference obligation.  The Trade also provides that Wachovia Bank can demand additional collateral support from VCG under certain conditions.  Wachovia Bank made various collateral support demands throughout 2007, which VCG alleges were improper.  The parties' dispute surrounding those demands is the factual predicate of both the FINRA Arbitration and a lawsuit initiated by VCG against Wachovia Bank that is currently before this Court, <u>CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.</u>, Case No. 07 Civ. 11078 (the "S.D.N.Y. Litigation").

VCG commenced the S.D.N.Y. Litigation on November 28, 2007, asserting claims against Wachovia Bank under New York law for fraud, mistake, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, specific performance, and

conversion. (Def. 56.1 St. ¶ 32.) On May 1, 2008, VCG initiated the FINRA Arbitration against WCM, asserting claims under the FINRA Regulatory Code for breach of fiduciary duty, negligence, negligent supervision, violations of customer agreements, violation of the implied covenant of good faith and fair dealing, fraud, constructive fraud, and violations of FINRA Conduct Rules. (Def. 56.1 St. ¶ 40.) There is no written or oral arbitration agreement between VCG and WCM. (Def. 56.1 St. ¶ 40.) Rather, VCG asserts that WCM, as a FINRA member, is required to submit to arbitration of VCG's claims because FINRA members are required to engage in arbitration at the request of a "customer" when the dispute arises "in connection with the business activities of the member." See FINRA Code of Arbitration Procedure, Rule 12200 ("FINRA Rule 12200").

Wachovia Bank is not named as a Respondent in VCG's Statement of Claim before FINRA (Def. 56.1 St. ¶ 40) and WCM is not named as a defendant in the S.D.N.Y. Litigation. The parties agreed to stay the FINRA Arbitration pending resolution of this case. (Def. 56.1 St. ¶ 47.)

DISCUSSION

Plaintiffs seek summary judgment on the following three alternative theories: (i) that Defendant is not a customer of WCM for the purposes of FINRA Rule 12200, and therefore there is no basis to compel WCM to arbitrate the parties' dispute; (ii) that the FINRA Arbitration is vexatious and duplicative of the S.D.N.Y. Litigation and should be enjoined under the All Writs Act, 28 U.S.C. § 1651; and (iii) that VCG waived its right to arbitrate by commencing and pursuing the S.D.N.Y. Litigation. VCG, on the other hand, cross-moves for summary judgment dismissing Plaintiffs' complaint and compelling arbitration on the ground that FINRA Rule 12200 requires WCM to arbitrate its dispute.

The Parties' Cross-Motions for Summary Judgment

Summary judgment is to be granted in favor of a moving party where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A fact is considered material to summary judgment "if it 'might affect the outcome of the suit under the governing law,'" and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

When cross-motions for summary judgment are filed, "the standard is the same as that for individual motions for summary judgment." Natural Res. Def. Council v. Evans, 254 F. Supp. 2d 434, 438 (S.D.N.Y. 2003). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." Id. (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).

Whether VCG Is WCM's Customer for the Purposes of Rule 12200

VCG argues that it is entitled to arbitrate its claims against WCM based on FINRA

Rule 12200, which requires all FINRA members, at the request of a "customer," to submit to arbitration any disputes "between a customer and a member" that arise "in connection with the business activities of the member . . . except the insurance business activities of a member . . ."[4] FINRA Rule 12200.

WCM is a FINRA member and is bound to arbitrate disputes that fulfill the two substantive elements of FINRA Rule 12200.  John Hancock Life Ins. v. Wilson, 254 F.3d 48, 58 (2d Cir. 2001).  The question of arbitrability is resolved by courts rather than arbitrators, unless the parties have explicitly agreed otherwise, First Option of Chicago Inc., v. Kaplan, 514 U.S. 938, 943 (1995), which they have not in this instance.  Accordingly, the Court must grant VCG's summary judgment motion to compel arbitration if there is no genuine issue of material fact as to whether VCG was a customer of WCM with regard to the Trade and whether the parties' interactions related to the Trade arose in connection with WCM's business activities.

The FINRA Code of Arbitration Procedure contains no precise definition of the term "customer."  Rather, it merely provides that "the term 'customer' shall not include a broker or dealer."  FINRA Code of Arbitration Procedure, Rule 12100(i).  The Second Circuit has held that the "ambiguity in the language [of FINRA Rule 12200] must be construed in favor of arbitration," John Hancock, 254 F.3d at 58, and, accordingly, courts have interpreted the term broadly.  See 1 David E. Robbins, Securities Arbitration Procedure Manual § 5-6(i) (5th ed. 2009); 2 Norman S. Poser & James A. Fanto, Broker-Dealer Law and Regulation § 28.07(A) (4th ed. 2009).  WCM, in

---

[4]   FINRA Rule 12200 is identical to Rule 12200 of the NASD Code of Arbitration Procedure, which is an amended version of former Rule 10301 of the NASD Code. The cases interpreting Rule 10301 apply with equal force to cases interpreting Rule 12200, as the amendment did not effect any substantive change to the rule.  Herbert J. Sims & Co., Inc., 548 F. Supp. 2d 759, 763 n.2 (N.D. Cal. 2008).

its motion papers, attempts to narrow the universe of "customer" relationships to those in which the purported customer could legitimately have been expected to rely on advice from its broker-dealer. However sensible such a narrowed construction might be, it is inconsistent with the plain text of the FINRA Rule, which narrows the universe of "customers" in just one way: by excluding brokers and dealers.  FINRA Rule 12100(i).  This sole exclusion suggests that FINRA intended to require its members to arbitrate disputes with the full array of parties with whom they have business dealings, without limiting the scope of the rule to parties who reasonably relied on the FINRA member for impartial advice.[5]  Therefore, WCM's arguments that VCG should not be entitled to demand arbitration because VCG disclaimed reliance on WCM's advice, or because VCG could not have reasonably relied on WCM for impartial advice, are inapposite to the question of VCG's "customer" status, although they may be relevant to the merits of the issues to be arbitrated.

WCM also argues that no "customer" relationship was established between WCM and VCG because the WCM employees who negotiated the Trade were acting "on behalf of Wachovia Bank" rather than on behalf of WCM.  Here, however, it is undisputed that Williams and Edwards were employed exclusively by WCM and their duties in that capacity included facilitating the trade as Wachovia Bank's representatives.  While they may well have represented Wachovia Bank, they were clearly performing services for WCM in so doing.  Thus, there is no factual issue as to whether WCM, as an entity, was involved in the transaction.  Cf. Citigroup Global Markets,

---

[5]  Although the Eighth Circuit has narrowed the definition of a customer relationship in its application of FINRA Rule 12200 to one in which "there existed some brokerage or investment relationship between the parties," Fleet Boston Robertson Stephens v. Innovex, Inc., 264 F.3d 770, 772 (8th Cir. 2001), its approach is contrary to the law prevailing in this Circuit and, moreover, would yield the same result here, as the undisputed evidence demonstrates that WCM facilitated the Trade for VCG and thus there was at least arguably "some brokerage or investment relationship" between the parties.

Inc. v. VCG Special Opportunities Master Fund Ltd., 2010 WL 786584 (2d Cir. March 10, 2010) (stating, with respect to similar fact pattern, that "[i]f VCG's credit default swap arrangements were never handled by an agent of [counterparty bank's FINRA-member affiliate], acting for that purpose, then VCG was not the 'customer' of [the FINRA-member affiliate] under any reasonable construction of the term," and holding, "in light of the contradictions in the record" as to whether VCG was a "customer" of the FINRA-member affiliate in even the broadest sense of the word, that the district court had not erred in finding a serious question going to the merits in connection with preliminary injunction motion practice).  The cases cited by Plaintiffs for the proposition that an employee of one entity can act on behalf of another entity are inapposite because in both cases the relevant persons were actually officers or directors of two different entities.  Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc., No. 03 Civ. 0377, 2003 WL 21767739, at *3 (S.D.N.Y. July 30, 2003) ("directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership") (internal citation omitted); In re Alper Holdings USA, No. 07 Civ. 12148, 2008 WL 541154, at *3 (Bankr. S.D.N.Y. Feb. 25, 2008) (employee whose actions were at issue was employed by two companies and was found to have acted on behalf of one of them in the matters at issue).

        Here, Williams and Edwards were employees solely of WCM; their interactions with VCG's representatives bring VCG within the broad scope of the term "customer" as used in FINRA Rule 12200.  The extent and implications of that "customer" relationship are matters for determination in the arbitral forum, because the undisputed facts also establish that the second substantive FINRA Rule 12200 arbitrability element is met – the dispute arises "in connection with

the business activities of the member." The Court concludes without difficulty that this element is satisfied, in light of the facts that WCM employees describe their duties as facilitating trades and the undisputed evidence demonstrates that WCM employees played a role in facilitating the Trade between VCG and Wachovia Bank. The "business activities" language of FINRA Rule 12200 is again quite broad, excluding only the insurance business activities of a member that is also an insurance company. This insurance carve-out is indicative of the sweep of the rule, and negates any implication that its arbitration mandate is limited to matters arising in traditional brokerage or advisory customer relationships.

Finally, the Court rejects WCM's argument that, because the agents acting on behalf of VCG were employed by Vanquish Capital, rather than by VCG, only Vanquish Capital could have been a customer of WCM. "Corporations can only act through individuals," Scientific Holding Co., Ltd. v. Plessey Inc., 510 F.2d 15, 22 (2d Cir. 1974), and, as VCG had no employees of its own, it acted through employees of Vanquish Capital. Although the precise nature of the relationship between VCG and Vanquish Capital is unclear, it is undisputed that WCM knew that the Vanquish Capital employees with whom it communicated regarding the Trade were acting on behalf of VCG. That knowledge, and those direct communications, distinguish this case from those in which courts have concluded that a customer relationship was not established with the FINRA member. See, e.g., Herbert J. Sims & Co. v. Roven, 548 F. Supp. 2d 759, 763 (N.D. Cal. 2008) (finding no customer relationship where FINRA member defendant "knew nothing about the [plaintiff investors who invested through an investment adviser] and had never heard of them until it was served with the Statement of Claim"). Rather, the general rule that a customer relationship can be found without "indicia of [a] direct customer relationship between the member and the

customer," John Hancock Life Ins. Co., 254 F.3d at 60, as long as doing so does not "upset the reasonable expectations of FINRA members," Herbert J. Sims & Co., 548 F. Supp. 2d at 763, applies in this case. WCM's employees dealt directly with representatives of VCG, knowing them to be representatives of VCG and knowing that neither the representatives nor VCG was a broker-dealer. Holding WCM to the obligation to arbitrate disputes arising from these dealings could in no way upset WCM's reasonable expectations as a FINRA member.

Waiver

WCM argues that VCG waived its right to arbitrate its dispute with WCM by pursuing the S.D.N.Y. Litigation against Wachovia Bank. VCG has been asserting claims under New York common law against one entity, Wachovia Bank, in a litigation in this Court, and seeks to assert claims under the FINRA Regulatory Code against a different entity, WCM, in arbitration. Based on these facts, the Court concludes that VCG has not waived its right to arbitration.[6]

The All Writs Act

The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C.A. § 1651 (West 2006). The court's power to enjoin arbitration under the All Writs Act can only be exercised if the court first determines that the parties have not agreed to submit a particular question to arbitration. Stevenson v. Tycol (US) Inc., No. 04 Civ. 4037, 2006 WL 2827635, at *9 (S.D.N.Y. Sept. 29, 2006) ("[A] a court may use the All Writs Act to prevent arbitrators from deciding issues within the court's jurisdiction. However, the [Federal

---

[6] In light of the Court's determination that WCM must arbitrate its dispute with VCG, the court need not consider VCG's argument that Wachovia Bank did not have standing to join in this action.

Arbitration Act] divests the courts of jurisdiction where the parties properly request arbitration."). As explained above, the Court concludes that WCM and VCG have committed to arbitration of their dispute. Accordingly, the Court denies Plaintiffs' request to issue a writ pursuant to 28 U.S.C. § 1651 to enjoin the FINRA Arbitration.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is denied, Defendant's motion for summary judgment is granted, and the complaint is dismissed. The parties are directed to proceed to FINRA Arbitration in accordance with the applicable FINRA rules.

The Clerk of Court is respectfully requested to enter judgment accordingly and close this case. This Order resolves docket entry nos. 25 and 29.

SO ORDERED.

Dated: New York, New York
March 29, 2010

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge